[Cite as *State v. Proffitt*, 2017-Ohio-1236.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NOS. CA2016-07-134 |
| Plaintiff-Appellee, | : | CA2016-07-135 |
| | : | O P I N I O N |
| - vs - | | 4/3/2017 |
| | : | |
| WENDELL PROFFITT, JR., | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case Nos. 16CRB01150 and 16CRB01151

Neal D. Schuett, city of Hamilton prosecutor, 345 High Street, 2nd Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Christopher P. Frederick, 300 High Street, Suite 550, Hamilton, Ohio 45011, for defendant-appellant

**M. POWELL, J.**

{¶ 1} Defendant-appellant, Wendell Proffitt, appeals his convictions in the Hamilton Municipal Court for domestic violence.

{¶ 2} Appellant was charged with one count of domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree, arising from an incident on January 11, 2016, and a separate count of domestic violence in violation of R.C. 2919.25(C), a misdemeanor of

the fourth degree, arising from an incident on March 26, 2016. The alleged victim of the offenses was Jennifer Morris ("Jennifer"), appellant's wife, with whom he was residing at the time of the incidents. Appellant entered pleas of not guilty and the charges proceeded to a bench trial. At trial, the state called Jennifer and Hamilton Police Officer Danielle Sorber as witnesses. The state offered into evidence two separate statements Jennifer had written concerning the January 11, 2016 incident and the March 26, 2016 incident. The statements were written on Hamilton Police Department statement forms (the two statements will be respectively referred as the January Statement and the March Statement, and collectively as "the Statements"). Appellant testified on his own behalf.

{¶ 3} Officer Sorber testified that on January 11, 2016, she responded to a residence on Ross Avenue in Hamilton, Ohio upon report of a fight. Upon arrival, the officer found Jennifer and Jennifer's mother. Appellant was not present. Officer Sorber observed red marks on the right side of Jennifer's face consistent with fingernail scratches. The officer denied independent knowledge of how the scratches on Jennifer's face originated and acknowledged they could have been self-inflicted. The officer observed no other visible signs of injury or struggle upon Jennifer's person. Jennifer reported to Officer Sorber what had occurred. During the officer's investigation, it was discovered that Jennifer was subject to an outstanding warrant for "dog tags." Consequently, Officer Sorber arrested Jennifer and took her to the police station for booking and then to the county jail. During the booking process, Officer Sorber obtained the January Statement from Jennifer regarding what had transpired between Jennifer and appellant on January 11, 2016. The January Statement stated that appellant had accused Jennifer of cheating on him, began screaming at her, dug his fingernails into the right side of her face, and choked her. Officer Sorber stated that the January Statement was consistent with what Jennifer had told her about the incident at the

scene.

{¶ 4} Jennifer testified that she and appellant were residing with their son at the Ross Avenue home on January 11, 2016. Jennifer stated that she and appellant "did argue a little bit" on that day, but that she did not remember if the argument became physical. Jennifer denied any recollection of making the January Statement. Upon being shown the statement, she acknowledged that it contained her handwriting and signature. She confirmed that the Hamilton Police Department statement form upon which the statement was written provided above her signature that the statement was true when it was made. However, when asked if the January Statement was true when she made it, Jennifer replied, "I'm not sure." Explaining, Jennifer stated that she has severe anxiety and that "my panic disorder makes everything seem a lot worse than it is."

{¶ 5} At this juncture, the state moved the trial court to allow the January Statement to be read into evidence pursuant to Evid.R. 803(5), the recorded recollection exception to the hearsay rule. Defense counsel had no objection and the trial court directed Jennifer to read the January Statement.

{¶ 6} On cross-examination, Jennifer denied any memory of what occurred on January 11, 2016, admitted that she "over exaggerates sometimes," and twice testified that she did not believe the January Statement reflected what happened. Jennifer acknowledged she understood it is important to be truthful when speaking with the police and that she tried to be truthful with them.

{¶ 7} By March 26, 2016, Jennifer, appellant, and their son had moved to a residence on Forrest Avenue in Hamilton, Ohio. Jennifer stated that she and appellant had a verbal altercation that day over a photograph depicting Jennifer and a friend. The photograph upset appellant and he again accused Jennifer of cheating on him. Jennifer denied any

- 3 -

recollection of appellant threatening her on that day. She recalled the police responded to her home after being called by appellant. Jennifer believed she made a written statement concerning her television being broken. Jennifer did not remember how the television was broken, but believed appellant must have broken it because she did not break it herself and only she and appellant were home at the time. Jennifer was then shown the March Statement. She did not recognize the March Statement but acknowledged it was in her handwriting and contained her signature, and that the Hamilton Police Department statement form provided above her signature that the statement was true when it was made.

{¶ 8} At this juncture, the state apparently moved the trial court to allow Jennifer to read the March Statement into evidence pursuant to Evid.R. 803(5). Once again, defense counsel made no objection and the trial court directed Jennifer to read the March Statement. In the March Statement, Jennifer wrote that appellant had threatened to kill her when she asked him to leave the home after appellant had thrown the television into the wall.

{¶ 9} On cross-examination, Jennifer denied recollection of writing the March Statement. Jennifer stated that appellant could have threatened to kill her, but that she had no specific recollection of such a threat.

{¶ 10} The state rested, and without objection, the Statements were admitted into evidence. The trial court subsequently denied appellant's Crim.R. 29 motion for acquittal.

{¶ 11} Appellant testified and admitted that he and Jennifer have a tumultuous marriage, involving frequent arguments and sometimes pushing and punching each other. However, appellant specifically denied scratching and choking Jennifer on January 11, 2016, and threatening to kill her on March 26, 2016. Appellant stated the only threat he made on March 26, 2016, was to end the marriage if Jennifer's behavior continued. Appellant testified he left the premises on March 26, 2016, because "it was best for me to leave until she got * *

- 4 -

* to a better place." Appellant further testified he called the police on March 26, 2016, to protect himself due to "other cases that [Jennifer] made against me."

{¶ 12} After the close of the evidence and following closing arguments by the state and defense counsel, the trial court considered the evidence and stated,

> When [Jennifer] testified here today, um – she testified about what she said was some kind of unusual medical condition that she has where she can't remember things and over exaggerates things so much though she's on disability for it. * * * And I think that she said that today because she was trying to explain why she was lying here today and I felt like she was clearly lying everywhere that she could here today. Um – because she's trying not to have the defendant be convicted and she's trying to help the defendant. In this case we heard statements that the defendant made to the police the day that these incidents happened and to the extent that these statements can be verified. Well, there were marks on her face and they were scratch marks on her face and says what she said in the statement. The statement seemed to me the written statement seemed to me to be truthful renditions of what happened close in time to when they happened and based on both of these statements I'm going to find the defendant to be Guilty on both of these cases.[1]

{¶ 13} Appellant appeals his convictions, raising three assignments of error.

{¶ 14} Assignment of Error No. 1:

{¶ 15} MR. PROFFITT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS AND FAIR TRIAL WERE VIOLATED WHEN HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 16} Appellant argues defense counsel was ineffective at trial for failing to object to inadmissible hearsay evidence, namely, defense counsel failed to object to Jennifer reading the Statements into evidence and to allowing the Statements to be admitted as exhibits.

---

1. The trial court's comments reference "statements that the <u>defendant</u> made to the police the day these incidents happened." The record does not reflect that appellant, as the defendant in the trial court, made any statements to the police on the day of the incidents, or at any other time. We assume from the context of the trial court's comments that the trial court misspoke and that its reference to the "defendant" was intended as a reference to Jennifer.

{¶ 17} To prevail on an ineffective assistance of counsel claim, appellant must show his trial counsel's performance was deficient, and that he was prejudiced as a result. *State v. Clarke*, 12th Dist. Butler No. CA2015-11-189, 2016-Ohio-7187, ¶ 49; *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984). Trial counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness. *Strickland* at 688. To show prejudice, appellant must establish that, but for his trial counsel's errors, there is a reasonable probability that the result of his trial would have been different. *Id.* at 694. The failure to satisfy either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim. *Clarke* at ¶ 49. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 7.

{¶ 18} Before we address whether defense counsel's failure to object to the Statements was ineffective assistance of counsel, we first consider whether the Statements qualified as a hearsay exception for recorded recollection under Evid.R. 803(5).

{¶ 19} Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A "statement" is defined for hearsay purposes as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Evid.R. 801(A).

{¶ 20} Pursuant to the above definitions, the Statements were hearsay. The Statements were made by Jennifer other than while testifying at trial, were assertions of what had occurred on January 11, 2016, and March 26, 2016, and were offered by the state to prove what occurred on those days between Jennifer and appellant. The trial court

- 6 -

considered the Statements as substantive proof of what occurred on January 11, 2016, and March 26, 2016.

**{¶ 21}** Hearsay is generally inadmissible, unless it falls within one of the numerous exceptions under Evid.R. 803 and 804. As pertinent to the instant case, Evid.R. 803(5) provides a hearsay exception for recorded recollection:

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown by the testimony of the witness to have been made or adopted when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

**{¶ 22}** In order to admit a statement into evidence under Evid.R. 803(5), a party must establish that (1) the witness has a lack of present recollection of the recorded matter, (2) the recorded recollection was made at a time when the matter was fresh in the witness's memory, (3) the recorded recollection was made or adopted by the witness, and (4) the recorded recollection correctly reflects the prior knowledge of the witness. *State v. Scott*, 31 Ohio St.2d 1, 6 (1972); *Dayton v. Combs*, 94 Ohio App.3d 291, 300 (2d Dist.1993). If Evid.R. 803(5) is satisfied, the statement itself may be read into evidence. *State v. Trotter*, 8th Dist. Cuyahoga No. 97064, 2012-Ohio-2760, ¶ 35.[2]

**{¶ 23}** Under Evid.R. 803(5), the statement must correctly reflect the knowledge the

2. Evid.R. 803(5) allows a record to be read into evidence, but specifically provides that the record itself is not to be admitted as an exhibit unless offered by an adverse party. Thus, Evid.R. 803(5) makes clear that although both are substantive evidence for a trial court (or a jury) to consider, the reading of statements into evidence is separate from admitting the statements as exhibits. While a trial court properly allows a statement to be read into evidence under Evid.R. 803(5) when the foundational requirements are met, a trial court errs in admitting the statement as an exhibit if it was not offered by the adverse party. *See State v. Kinsel*, 4th Dist. Ross No. 1141, 1985 Ohio App. LEXIS 8339 (July 5, 1985) (while the accident report could properly be read into evidence under Evid.R. 803[5], the trial court erred in admitting the accident report as an exhibit where the accident report was not offered by the defendant); *State v. Bibbs*, 3d Dist. Hancock No. 5-16-11, 2016-Ohio-8396 (the trial court erred in allowing the reading of the statement and in admitting it as an exhibit). In the case at bar, defense counsel specifically acquiesced to the admission of the Statements into evidence as state exhibits.

witness had at the time it was recorded. *Id.* "[Evid.R. 803(5)] makes explicit the requirement that the foundation for the introduction of the statement under this exception must be made by testimony of the witness himself." Evid.R. 803(5), Staff Notes; *State v. Ross*, 6th Dist. Huron No. H-11-022, 2013-Ohio-1595, ¶ 17 ("The foundation for the admission of such a statement under Evid.R. 803[5] must be made through the testimony of the witness himself"). Thus, the proponent of the statement must produce affirmative proof, through the testimony of the witness, that the statement correctly reflects the witness's prior knowledge. The state failed in this regard.

{¶ 24} Jennifer testified she was "not sure" if the January Statement accurately reflected what happened on January 11, 2016, because her "panic disorder makes everything seem a lot worse than it is." Jennifer further testified she thought she had made a statement concerning the March 26, 2016 incident, but did not recognize the March Statement when it was presented to her at trial.

{¶ 25} The state established through Jennifer's testimony that the Statements were made in her handwriting and that the Hamilton Police Department forms upon which she had written the Statements provided above the signature line, "I have read the statement and it is true and correct."

{¶ 26} However, Jennifer's mere acknowledgment that the forms upon which the Statements were written contain the aforementioned preprinted language does not satisfy the requirement under Evid.R. 803(5) that the "testimony of the witness" establish that the statement correctly reflects the witness's prior knowledge. Jennifer never testified that the Statements accurately reflected her prior knowledge of the incidents, nor may her testimony be so construed. Likewise, Jennifer's acknowledgment that the Statements were made in her handwriting does not suggest that they correctly reflect her prior knowledge of the

- 8 -

incidents.

{¶ 27} The trial court did not believe Jennifer's testimony concerning the Statements. That is the trial court's prerogative as the trier of fact and we should defer to this determination. However, Jennifer's unbelievable testimony that the Statements did not, or may not, correctly reflect her prior knowledge of the incidents, is not proof that the Statements correctly reflected her prior knowledge. Rather, Jennifer's incredible testimony leaves the issue unresolved. This does not satisfy the affirmative foundational requirement under Evid.R. 803(5) that the testimony of the witness show that the record correctly reflects the witness's prior knowledge.

{¶ 28} Furthermore, Evid.R. 803(5) is not satisfied by Jennifer's expression of a general recognition of the importance of being truthful with the police and that she made an effort to do so.[3] Evid.R. 803(5) is clear that the witness's testimony must affirmatively establish that the statement correctly reflects prior knowledge of the witness. Evidence extrinsic to the witness's testimony, even if it tends to establish the trustworthiness of the statement, is incompetent for purposes of determining admissibility under Evid.R. 803(5).[4]

{¶ 29} Based upon the foregoing, we find that the Statements were not within the ambit of the Evid.R. 803(5) hearsay exception. Had defense counsel objected to Jennifer

_____

3. This testimony was elicited during Jennifer's cross-examination and was subsequent to the trial court's ruling that Jennifer read the Statements into evidence pursuant to Evid.R. 803(5). Thus, this testimony could not have been considered by the trial court in ruling the Statements admissible.

4. The dissent apparently construes our opinion as finding the trial court relied upon extrinsic evidence tending to show the Statements were trustworthy in admitting them. We make no such finding and note that none of the evidence extrinsic to Jennifer's testimony tending to show the Statements were trustworthy was presented until after the Statements had been admitted. Therefore, the trial court could not have relied upon such evidence in admitting the Statements. We acknowledge that there is evidence, other than Jennifer's testimony, tending to show that the Statements are trustworthy. However, we emphasize that admissibility under Evid.R. 803(5) is a threshold determination restricting establishment of certain foundational requirements to the declarant's testimony. Once a statement is properly admitted pursuant to Evid.R. 803(5), then, and only then, may all evidence reflecting upon the trustworthiness of the statement be considered in determining the weight to be given to the statement. This reference in the body of our opinion is intended only to address any suggestion in the dissent that hearsay is admissible under Evid.R. 803(5) upon a general showing that the hearsay is trustworthy.

reading the Statements into evidence and to allowing the Statements to be admitted as exhibits, the objection ought to have been sustained and the Statements excluded.

{¶ 30} We now consider whether defense counsel's failure to object to the admission of the Statements is ineffective assistance of counsel.

{¶ 31} As set forth above, the *Strickland* test consists of two prongs; a performance prong (did counsel's performance fall below an objective standard of reasonableness), and a prejudice prong (is there a reasonable probability that the result of his trial would have been different, but for counsel's errors). Both prongs must be established for counsel to be found to have provided ineffective assistance. *State v. Myers*, 12th Dist. Fayette No. CA2005-12-035, 2007-Ohio-915, ¶ 33.

{¶ 32} The fact that the admission of the Statements was objectionable does not, in and of itself, establish that counsel's performance was deficient. "[A]ttorneys are given a 'heavy measure of deference' in their decision making and there exists a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.*; *Strickland*, 466 U.S. at 689. Refraining from objecting to otherwise objectionable evidence may, depending upon the circumstances, be sound trial strategy.

{¶ 33} It is apparent that defense counsel's trial strategy was to attack the veracity of the Statements rather than oppose their admissibility. In opening statement, defense counsel said, "I believe the statements of the witness or (sic) likely not be corroborated by the physical evidence that was observed by the officers." In a case such as this, where the state's case is dependent upon the Statements, it would be a sound trial strategy to attack the veracity of the Statements, if they are admitted. However, such a trial strategy does not exclude a primary trial strategy of opposing admission of this damaging evidence. Opposing admission of the Statements sacrifices nothing in terms of a trial strategy to attack the

veracity of the Statements. If defense counsel is unsuccessful in resisting admission of the Statements, he may still attack their veracity, consistent with having opposed their admissibility in the first instance. However, a trial strategy to accede to the admission of the Statements only for the opportunity to establish that they are not true, begs the question of why defense counsel would not initially oppose their admission. Certainly, casting Jennifer as generally untruthful was unnecessary, as it was the Statements and not her trial testimony that incriminated appellant.

{¶ 34} No reasonable trial strategy is apparent in defense counsel's failure to object to the admission of the Statements, upon which the state's case depended.[5] Defense counsel's failure to object to the admission of the Statements falls below an objective standard of reasonableness. Appellant has therefore satisfied the *Strickland* performance prong.

{¶ 35} Consideration of the *Strickland* prejudice prong requires an inquiry as to whether there is a reasonable probability that the result of appellant's trial would have been different, but for counsel's error. Clearly, without the Statements, the state would have been unable to establish what occurred between appellant and Jennifer on January 11, 2016, and March 26, 2016. While Officer Sorber observed scratches on Jennifer's face on January 11, 2016, those observations lack context absent the January Statement. The state's case was dependent upon the Statements. Indeed, the trial court's announcement of its verdict unequivocally reveals that the guilty findings were based upon the Statements: "[T]he written

---

5. This is particularly true in a bench trial, such as we have in this case. In contrast, a jury trial would have presented a different situation. In a jury trial, defense strategy might suggest avoiding the risk of offending the jury by objecting to the admission of relevant, yet otherwise inadmissible, evidence and then attacking the reliability of the Statements during Jennifer's cross-examination. However, the risk of offending the trier of fact is not present in a bench trial, as a trial court is presumed to act properly in consideration of the evidence. *State v. Eubank*, 60 Ohio St.2d 183, 187 (1979) ("[W]e may give weight to the fact that the error occurred in a trial to the court, rather than in a jury trial. Indeed, a judge is presumed to consider only the relevant, material and competent evidence in arriving at a judgment, unless the contrary affirmatively appears from the record."); *State v. Browning*, 12th Dist. Clermont No. CA94-04-022, 1994 WL 704903 (Dec. 19, 1994).

statement seemed to me to be truthful renditions of what happened close in time to when they happened and based on both of these statements I'm going to find the defendant to be Guilty on both of these cases." Absent admission of the Statements, there is a reasonable probability that the results of the trial would have been different and that appellant would have been acquitted. Defense counsel's failure to object to the admission of the Statements into evidence therefore satisfies the *Strickland* prejudice prong.

{¶ 36} In light of the foregoing, we find that appellant received ineffective assistance of counsel at trial when defense counsel failed to object to the admission of the Statements into evidence.[6]

{¶ 37} Appellant's first assignment of error is sustained.

{¶ 38} Assignment of Error No. 2:

{¶ 39} THE TRIAL COURT VIOLATED MR. PROFFITT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS AND FAIR TRIAL WHEN IT ADMITTED INTO EVIDENCE WRITTEN STATEMENTS CONTAINING INADMISSIBLE HEARSAY.

{¶ 40} Appellant argues the trial court erred in directing Jennifer to read the Statements into evidence and in admitting the Statements as exhibits.

{¶ 41} We are mindful that the admissibility of evidence is within the sound discretion

---

6. As stated earlier, Evid.R. 803(5) allows a record to be read into evidence, but specifically provides that the record itself cannot be admitted as an exhibit unless offered by an adverse party. "The purpose of this restriction is to avoid elevating the declarations contained in documents above ordinary testimonial evidence." *State v. Davis*, 11th Dist. Lake No. 92-L-089, 1993 Ohio App. LEXIS 5917, *18 (Dec. 10, 1993). In the case at bar, not only did Jennifer read the Statements into evidence, but the statements themselves were admitted as exhibits at the state's request, and not at the request of defense counsel, the adverse party. In addition, defense counsel informed the trial court he "would not object to their admission" as exhibits. A defense counsel's failure to object to the admission of statements as exhibits under Evid.R. 803(5) may constitute ineffective assistance of counsel, especially in a jury trial, as admitting a record as an exhibit "results in it going to the deliberation room with the jury and a patent danger is that it will be given undue weight by the jury." *Davis* at *18-19. Nonetheless, we will not address whether appellant received ineffective assistance of counsel when defense counsel failed to object to the admission of the Statements as exhibits. Nor will we address the admission of the Statements as exhibits separate and apart from whether the Statements come within the Evid.R. 803(5) recorded recollection hearsay exception. Any additional prejudice from the admission of the Statements as exhibits is marginal and insubstantial, particularly in a bench trial such as here.

of the trial court and that the trial court is entitled to our deference in making decisions upon the admissibility of evidence. We further recognize that decisions on the admissibility of evidence should not be reversed unless there is an abuse of discretion. However, the focus of our opinion is defense counsel's failure to invoke, by objection, the trial court's discretion to determine if the Statements were admissible pursuant to Evid.R. 803(5), to resist the admission of the evidence, and to preserve for appeal an abuse of discretion in the admission of inadmissible evidence.

{¶ 42} It is not the trial court's responsibility to interject itself into defense trial strategy. Trial strategy may be promoted by the admission of otherwise inadmissible evidence. Jennifer was the first witness to testify at trial and the Statements were admitted during the state's case-in-chief, direct examination of Jennifer and before defense counsel had cross-examined her. Defense counsel declined the trial court's invitation to object to the January Statement and interjected no objection to the March Statement. At this early stage of the trial, the trial court could have no inkling of what the evidence would show and what the defense strategy may be. Certainly, the trial court did not abuse its discretion by admitting the Statements in that context. To have done otherwise would risk substituting the trial court's conception of sound trial strategy for defense counsel's.

{¶ 43} Because defense counsel did not object to the admissibility of the Statements, and the trial court did not discuss Evid.R. 803(5) in admitting them, we cannot definitively know if the trial court considered the foundational requirements of Evid.R. 803(5) in admitting the Statements, or whether the Statements were admitted merely because defense counsel did not oppose their admission.[7] The record suggests the latter. When the state moved for

---

7. At the conclusion of the evidence, the trial court noted that Officer Sorber's observations that Jennifer had scratches on her face corroborated the Statements. The court then went on to state that the Statements were "truthful renditions of what happened close in time to when they happened." However, these observations and statements by the trial court were not made in conjunction with the admission of the Statements, but rather when

the admission of the January Statement under Evid.R. 803(5), the trial court inquired of defense counsel, "Well, * * * what do you think about that?" When defense counsel indicated he had no objection to the admission of the January Statement, the trial court stated, "You don't object? Okay. Why don't you read the statement for us?"

{¶ 44} The reality is, trial courts often permit the admission of inadmissible evidence when there is no objection. In the usual case, this is not an abuse of discretion. In such instances, the error, if any, is not in the trial court's admission of the evidence, but in counsel's failure to resist its admission and preserve for appeal any abuse of discretion in the admission of the inadmissible evidence.

{¶ 45} As set forth above, defense counsel specifically stated he had no objection to Jennifer reading the January Statement into evidence, even after being invited to do so by the trial court, and made no objection when the state moved for Jennifer to read the March Statement into evidence. Defense counsel also did not object to the admission of the Statements as exhibits. Evid.R. 103(A)(1) requires a party to timely object and state the specific ground for the objection. We have discussed above why we believe this failure constitutes ineffective assistance of counsel. Because defense counsel failed to object to the reading of the Statements and to their admission as exhibits, appellant's argument is waived unless the admission of the Statements amounted to plain error. *See State v. Blake*, 12th Dist. Butler No. CA2011-07-130, 2012-Ohio-3124. However, appellant does not claim plain error on appeal and we will not address the issue sua sponte.

{¶ 46} Appellant's second assignment of error is accordingly overruled.

---

the trial court announced its verdict and long after the Statements had been admitted during Jennifer's direct examination by the state. It is apparent that the trial court's comments were related to its weighing of the evidence rather than its admissibility as the court relied upon Officer Sorber's testimony which was not offered until after the Statements had been admitted.

{¶ 47} Assignment of Error No. 3:

{¶ 48} MR. PROFFITT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 49} Appellant argues his domestic violence convictions are against the manifest weight of the evidence. However, this assignment of error is moot given our holding under the first assignment of error that defense counsel was ineffective at trial.

{¶ 50} The judgment of the trial court finding appellant guilty of two counts of domestic violence in violation of R.C. 2919.25(A) and 2919.25(C), respectively, is reversed and the matter is remanded to the trial court for further proceedings.

HENDRICKSON, P.J., concurs.

PIPER, J., dissents.

**PIPER, J., dissenting.**

{¶ 51} In determining the trial court relied upon extrinsic evidence, the majority misapplies the facts to the foundation requirements for admission of evidence pursuant to Evid.R. 803(5). The majority opinion finds that if a victim-witness testifies doubting whether or not her previous statements reflect what happened, then her other testimony cannot be used to establish the use of Evid.R. 803(5). The question becomes whether or not there was sufficient evidence for the trial court to consider Jennifer's past statements as true when she gave them. The record is clear there was testimony upon which the trial court reasonably relied in finding her past statements truthful when she gave them.

{¶ 52} The majority suggests an appellate review best determines which portions of Jennifer's testimony should be relied upon in determining the trustworthiness of her

- 15 -

previously recorded statements.[8]   It is the *trial court* that rightly assesses the witness' demeanor and believability in determining whether or not past statements have sufficient trustworthiness.  In doing so, the trial court determined that Evid.R. 803(5) was applicable. Since wide latitude is given to the trial court in deciding the appropriateness of admitting evidence, I respectfully dissent from the majority's opinion, which to me, substitutes its judgment for that of the trial court.

## Sufficient Foundation Existed

{¶ 53} In considering the trial court's observations and the way the evidence developed, the trial court did not abuse its discretion in finding there was sufficient indicia of trustworthiness to admit the victim-witness' prior statements.

{¶ 54} The staff notes specific to Evid.R. 803(5) provide,

> The exception gathers its circumstantial guarantee of trustworthiness from the fact that the person having made the statement is on the witness stand subject to oath, cross-examination *and demeanor evaluation*.  (1) If the statement was reduced to writing at or near the time of the event and (2) the witness can testify that the writing accurately describes the event that he observed first hand and (3) that it does not now refresh the independent recollection of the witness, it may be admissible as an exception to the hearsay rule.

(Emphasis added, numbers added.)

{¶ 55} In the instant case, the victim-witness testified (1) her statements were reduced to writing at or near the time of the event by her going to the police department and handwriting her statements, (2) all indications are that when she wrote the statements, she intended them to be truthful and, (3) that even after reading the statements, she does not remember what happened.  Her testimony was in accordance with Evid.R. 803(5), and

---

8.   The majority also weighs the different defense strategies and prioritizes which defense strategies are "primary" to other strategies.  As later discussed, the first prong of *Strickland* does not permit such a weighing process.

importantly, she was subject to the trial court's "demeanor evaluation." Moreover, none of this testimony required the trial court to rely upon extrinsic evidence.

{¶ 56} The majority emphasizes the victim-witness' uncertainty, however, it is the trial court that is in the best position to judge the victim-witness' credibility regarding her testimony. *City of Hamilton v. Rose,* 12th Dist. Butler No. CA2000-07-146, 2001 WL 432732, *3. The majority's judgment is severely hampered by not having the opportunity to observe the victim-witness and evaluate her demeanor and delivery of testimony.

{¶ 57} Case law cited by the majority would agree with the analysis herein:

> Where the witness cannot recall the preparation of the record and can testify only that he would not have signed or prepared the memorandum had he not believed it to be a true and accurate statement of the event in question[,] * * * *[m]ost commentators advocate admitting the statement, despite the fact that the foundation is nothing more than a general assertion of honesty which sheds little light on accuracy.*

(Emphasis added). *City of Dayton v. Combs*, 94 Ohio App.3d 291, 301 (2d Dist.1993), citing 1 Weissenberger, *Ohio Evidence*, Section 803.60, at 59 (1993).

{¶ 58} *Combs* presented facts very similar to those before us. In *Combs*, the witness acknowledged his signature on the statement and, if the statement says something, it is "probably" true, and that his statement was "to the best of his ability." The appellate court said that "albeit not a perfect foundation," the testimony contained sufficient indicia of the statement's trustworthiness to meet Evid.R. 803(5). The trial court sub judice reasonably determined that the foundation presented had an indicia of trustworthiness not dissimilar to that in Combs, and other cases as well.

{¶ 59} There are many cases where the victim acknowledges his or her signature, thus indicating a truthful statement to the police. *See State v. Fields*, 8th Dist. Cuyahoga No. 88916, 2007-Ohio-5060, ¶ 20 (the victim signed a statement after her alleged assault and

- 17 -

admitted signing the written statement and that her signature acknowledged it to be truthful and accurate). Here, the victim acknowledged, *through her in-court testimony*, the statements themselves reflected they were true when she wrote them. In fact, the majority refers to this acknowledgement in its statement of facts when it stated, "Jennifer acknowledged she understood it is important to be truthful when speaking with the police and that she tried to be truthful with them."

{¶ 60} Although in vague and reluctant terms, the victim-witness herein testified to the veracity of the statements she previously gave the police. When asked, prior to the statement being read into evidence, whether she signed the statement, she testified that it was her signature on the statement, and that the statements indicated it was true when made. This second statement was also in her handwriting, and she testified it contained her signature, which she knew reflected her statement was true when she made it.

{¶ 61} In supporting a reversal of this case, the majority cites *State v. Ross*, 6th Dist. Huron No. H-11-022, 2013-Ohio-1595. Similar to our current situation, Ross argued on appeal that it was plain error for the witness' video interview to be admitted. The Sixth District disagreed, finding that, "an adequate foundation was laid for the use of [the] video pursuant to Evid.R. 803(5)." *Id.* at ¶ 19. The foundation in *Ross* is extremely similar to the foundation presented in our current case.

| In *Ross:* | Present case: |
|---|---|
| i. At the time of her testimony, the victim-witness could not remember everything that had occurred; | i. At the time of her testimony, the victim-witness said she did not remember the events that occurred; |
| ii. While testifying, the victim-witness was not sure of what she told the police back when she was interviewed; | ii. While testifying, the victim-witness indicated that she was not sure as to what she told the police in her statements; |
| iii. The victim-witness acknowledged in her testimony that she gave a recorded video | iii. The victim-witness acknowledged handwriting the statements and that the signatures on the |

| statement to the police; | statements were hers as well; |
|---|---|
| iv. The video interview occurred close in time to when the event occurred; | iv. She testified that the statements she gave to the police were close in time to the events when they occurred; |
| v. She believed she had been truthful in her interview at the time it was made. | v. When she gave her statements to the police, she knew "it is important to tell the truth;" she thought she told the truth when she gave her statements; and, that her statements reflect they were truthful when written. |

**{¶ 62}** Where the foundation sub judice was equivalent to the foundation found acceptable in *Fields*, *Combs* and *Ross*, the trial court herein was not unreasonable, arbitrary, or unconscionable in its ruling. Equally important to note, this comparison of testimony does not rely upon extrinsic evidence, as the majority suggests.[9]

**{¶ 63}** The trial court was the only one in a position to assess and evaluate demeanor in determining the credibility of the victim-witness' testimony. The trial court specifically found the victim-witness' in-court-testimony lacked credibility. The court went so far as to express it was obviously apparent the victim-witness was lying in an effort to help her husband in his defense. Additionally, the trial court specifically noted that the victim-witness' prior statements were truthful at the time they were made and were "truthful renditions of what happened close in time to when they happened." We should not second guess the trial court on these findings. Evid.R. 803(5) is rightfully applied when preventing a witness from feigning a lack of memory to control the outcome of a defendant's accountability for his criminal conduct. The trial court found in this instance, the victim-witness' previous statements were truthful versions of the previous events and that her in court testimony was untruthful, designed to aid her husband.

---

9. The majority suggests the trial court can never be assisted by extrinsic evidence in assessing the trustworthiness of a potential Evid.R. 803(5) hearsay exception. However, the parties did not litigate such before us, as the issue did not arise.

{¶ 64} Time and again, victims of domestic violence are known to frequently become vague or even recant statements in order to protect the abuser.  *See State v. Plott*, 3d Dist. Seneca Nos. 13-15-39 and 13-15-40, 2017-Ohio-38.  The cycle of domestic violence is one of control, anger, abuse, and forgiveness, then the cycle repeats itself.  Such common knowledge is not outside the purview of trial courts, given the frequency with which domestic violence cases arise.  Thus, the issues of evidentiary admissibility, particularly when dealing with hearsay exceptions like Evid.R. 803(5), are best left for the trial courts in assessing the witness' demeanor towards evaluating the indicia of trustworthiness.  Courts are aware that victims of domestic violence are often under psychological pressure to protect their abusers, often sitting just feet away while the victim testifies.

{¶ 65} While the foundation herein may not be perfect, and while the majority may be "less persuaded by the trial court's reasoning process than by the countervailing arguments" such does not support finding the trial court abused its discretion.  *Morris*, 2012-Ohio-2407 at ¶ 14.[10]  Therefore, even assuming defense counsel had objected, Proffitt's first assignment of error must be overruled, as the trial court had sound reason in allowing the victim-witness to read her statements into evidence pursuant to Evid.R. 803(5).

### *Strickland* – 1st Prong

{¶ 66} To establish constitutionally-ineffective assistance of counsel, it must be clearly demonstrated that counsel's performance was deficient such that the defendant was deprived of a fair trial.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  *State v. Carroll*, 4th Dist. Ross No. 15

---

10. The victim-witness wrote in one of her statements, "please help me."  If we too narrowly construe the exact words necessary for an Evid.R. 803(5) foundation, and shackle a trial court's discretion in admitting past recollections recorded, the state will be severely hampered in aiding domestic violence victims psychologically caught-up in the cycle of violence.

CA 3506, 2016-Ohio-7218, ¶ 24. It is not the moment of a single opportunity to object, but rather the overall performance of counsel that sheds light on defense counsel's strategy.

**{¶ 67}** When a 9-1-1 fight call is made to the police; the scene responded to shows signs of a thrown, busted TV and fresh holes in the wall; and the victim has obvious abuse injuries to her face which are observed by the police; and there is a history of past physical altercations in the relationship, defense counsel's trial strategy becomes difficult to formulate, and even impossible, if the victim testifies truthfully to what occurred.

**{¶ 68}** Yet consider, by the time trial rolls around, the victim-witness becomes reluctant to assist in the prosecution of her husband and father of her child. She now is willing to testify in a way that undermines or negates the previous statements she gave to police. Not willing to say she lied in her statements, making her subject to a falsification charge, the victim is willing to aid her abuser by indicating she does not remember what she said to the police. Now the defense strategy begins to take form and develop. With the victim-witness' subtle yet furtive cooperation, defense counsel obtains a strategy to discredit the victim-witness' prior statements.[11]

**{¶ 69}** Therefore, pursuant to the defense strategy, the admission into evidence of the victim-witness' prior recorded statements became irrelevant, because the strategy was to discredit the witness *and* her previous statements. The victim-witness offers that she cannot remember what happened, that she has a panic/anxiety disorder, her brain just shuts down, she was under the influence of medication, and she frequently "exaggerates." The trial court, however, saw through defense counsel's strategy.[12]

---

11. The victim-witness volunteered, "I'm not trying to incriminate myself," yet she was obviously concerned about the thin line that separated her from that possibility.

12. The trial court, in assessing the trustworthiness of the victim-witness' prior statements, used her current testimony and determined she was not telling the truth in court about certain aspects of her testimony in an effort to aid her husband's defense.

- 21 -

{¶ 70} Defense counsel did not object to the victim-witness reading her past statements into evidence because the strategy all along was to make the statements unbelievable. Although the court specifically extended the opportunity for defense counsel to object, he expressly waived such opportunity because (1) the foundation had been properly laid by the state, (2) if he objected based on foundation, defense counsel knew the state would cure any deficiency with further questioning, and (3) defense counsel's strategy all along was to discredit the victim-witness including her previous statements.[13]

{¶ 71} When the victim-witness skipped over a few sentences reading her prior statement, defense counsel objected because he wanted every line to be read. In that exchange, the court informed defense counsel that only defense counsel could request admission of the physical statements. Evid.R. 803(5). The court stated, "if the defendant offers [the statement] into evidence, then the statement[,] the written statement comes into evidence and then I would have that in front of me." Defense counsel responded "uh huh" presumably in acquiescence since defense counsel did not want certain parts left out. Additionally, at the end of the state's case when discussing the exhibits, it was apparent the prosecutor believed the statements had already been admitted by the defense and defense counsel responded, "That's fine. We would not object to their admission."

{¶ 72} Defense counsel knew that only he could have the statements admitted. It is clear he did not consider the statements anymore harmful than the testimony itself. Since his

---

13. The majority seems to dismiss the subtle difference between counsel who fails to object because they do not know to object or are otherwise asleep at the wheel and counsel, as here, who consciously decided not to object. *See State v. Bradley*, 42 Ohio St.3d 136, 140 (1989) (defense counsel consciously refused to object). Here, counsel decided not to object, just as he decided admitting the physical statements as exhibits did not hurt his strategy. It was not within defense counsel's strategy to tip off the state to better fortify the trustworthiness of the victim-witness' prior statements, and as footnote 2 of the majority opinion points out that the more the victim-witness was questioned, the more the foundation for Evid.R. 803(5) was developed. Thus, not objecting to foundation was a significant tactic in his strategy, as defense counsel did not want to have the state develop any additional testimony going to the truthfulness of her past statements.

strategy was to convince the court they did not matter (were not believable), defense counsel saw no harm in their being admitted. Defense counsel's plan was to use cross-examination to make the victim-witness look like an unstable, exaggerating, mentally defective, under-the-influence individual whose past statements could not be believed – not an unreasonable strategy.

{¶ 73} Merely because the trial tactics defense counsel employed were ultimately unsuccessful, it does not mean that counsel's performance was deficient. Debatable trial tactics and strategies do not constitute deficient performance. *State v. Payton*, 124 Ohio App.3d 552 (12th Dist.1997). Judicial scrutiny of counsel's performance must be *highly deferential*, and every effort must be made to eliminate the distorting effects of hindsight. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984), paragraph two of the syllabus.

{¶ 74} Our precedent has consistently abided by the "strong presumption" and "wide range" of professional assistance that can be rendered before being considered deficient. *State v. Revels*, 12th Dist. Butler Nos. CA2001-09-223 and CA2001-09-230, 2002-Ohio-4231, ¶ 25 (failing to present a false identification defense and choosing not to cross-examine the eyewitness was not deemed to be deficient performance); *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814 (failing to proffer an exculpatory statement, to make objections, to cross-examine the state's expert, and to move the court based on insufficiency of evidence was not deemed to be deficient performance); and *State v. Casey*, 12th Dist. Clinton Nos. CA2016-01-001 and CA2016-06-013, 2017-Ohio-790 (failing to object "no fewer than thirty three" times to hearsay and failing to object "no fewer than twenty one" times to unqualified expert testimony, was not deemed to be deficient performance).

{¶ 75} The majority finds "no reasonable trial strategy is apparent" when defense counsel declined to object to the victim-witness' prior statements being read into evidence. However, using cross-examination to discredit a witness' prior statements is a reasonable strategy particularly in a domestic violence case resting upon the testimony of an abused and reluctant wife and mother.

{¶ 76} Until today, no Ohio precedent holds the absence of a "primary strategy," rather than defense counsel's implemented strategy, operates to create constitutionally-ineffective assistance of counsel. To explain its reasoning, the majority suggests that *Strickland* supports a reversal for ineffective assistance if the appellate court can picture the existence of a "primary" strategy which could have been pursued before, and in spite of, trial counsel's strategy. However, the law is clear and long-established that appellate courts must not engage in a weighing of strategies when addressing whether a defendant was denied effective assistance of counsel. *State v. Phillips*, 74 Ohio St.3d 72 (1995).

{¶ 77} For example, the Second District Court of Appeals recently addressed a similar argument that an individual is denied effective assistance of counsel because a better trial strategy existed. *State v. Hartman*, 2d Dist. Montgomery No. 26609, 2016-Ohio-2883. Hartman was accused of rape, and at trial, the victim testified to the events of non-consensual sex. However, on direct, the victim did not go into detail about force being used. During cross-examination, defense counsel asked the victim specific questions about any force Hartman had used to challenge her credibility by bringing up the victim's inconsistent statements to investigators about Hartman's use of force. The questions on cross-examination, along with the victim's answers to those questions, were very damaging because they allowed the jury to hear details about the force Hartman used during his crimes.

**{¶ 78}** Hartman claimed on appeal that his trial counsel was ineffective for employing such a strategy and should have avoided any questions about force on cross-examination. The *Hartman* court disagreed, and refused to engage in weighing which strategy was better. Hartman's counsel could have used the lack of force as a defense strategy, yet, the appellate court determined:

> In a case that rests entirely on the credibility of the witnesses, a strategic choice to conduct cross-examination of the victim on factual issues relating to elements of the offense is not automatically ineffective assistance of counsel. In the case before us, it was a valid defense strategy to attack the credibility of the victim through the use of prior inconsistent statements, a well-established trial strategy.

*Id.* at ¶ 49.

**{¶ 79}** Discrediting a victim-witness' prior statements is certainly a reasonable strategy, not professional performance in violation of the Constitution. *Id.* at ¶ 46 ("Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel"); *State v. Bajaj*, 7th Dist. Columbiana No. 03 C0 16, 2005-Ohio-2931 (reasonable defense strategy to discredit victim); and *State v. Reid*, 8th Dist. Cuyahoga No. 83206, 2004-Ohio-2018 (defense counsel's failure to object to evidence of defendant's previous sexual assault of victim was reasonable trial strategy where counsel intended to discredit the victim).

**{¶ 80}** When the majority focuses narrowly upon the single moment of a potential objection, it precludes itself the broader opportunity to perceive the totality of defense counsel's strategy during the trial. It is the overall record that discloses trial counsel's strategy, and not objecting was merely a part of that strategy. Simply because there might be a better way, in hindsight, to defend Proffitt does not mean that trial counsel's

performance was deficient. Attempting to discredit the witness' prior statements with the use of her current in-court testimony was not unreasonable in light of the circumstances. For the reasons discussed, even if the foundation was insufficient, which I do not agree, Proffitt cannot clearly demonstrate an ineffective assistance of counsel claim because he did not establish "deficient performance" pursuant to the first strong in Strickland and a plethora of other case law.[14] A debatable decision concerning trial strategy cannot form the basis for finding defective performance.

### *Strickland* – 2nd Prong

{¶ 81} The prejudice prong of *Strickland* basically requires that the defendant demonstrate that "but for counsel's errors, the result of the proceedings would have been different." *State v. Adams*, 4th Dist. Lawrence No. 15CA2, 2016-Ohio-7772, ¶ 91. Generally, courts decline to speculate or assume the existence of prejudice. *Id.* To succeed on this prong, the defendant must "affirmatively establish" that the claimed prejudice had a detrimental effect on the outcome. *Id.*

{¶ 82} When the state attempted to use the prior recorded statements by having them read into evidence, defense counsel had only two directions he might travel. He could take an up-the-hill fight to keep the evidence out, or he could continue coasting downhill with his original strategy of discrediting the prior statements through cross-examination. If counsel chose the former, we know with certainty the state would have attempted to rehabilitate or cure any suggested deficiency in the establishment of a foundation. Defense counsel chose to stick with his strategy, rather than accepting the boulder of Sisyphus. To assume the state would have been ultimately unsuccessful and defense counsel could have kept out evidence

---

14. Just as the majority determines in its footnote 4, I too, do not address in detail counsel's acquiescence to the statements coming into evidence as exhibits because their significance as exhibits was "marginal and insubstantial."

of both statements is speculative, at best. Thus, we should decline the opportunity to assume prejudice where none has been proven.

{¶ 83} An objection would only have served to focus the state on efforts to emphasize the trustworthiness of the past statements. It is unreasonable to assume the state would immediately fold its tent simply because of an objection. Further questioning may well have developed the prior statements as having indicia of trustworthiness or that the victim-witness was aligned with her husband and his defense, thus permitting the state's use of leading questions. Evid.R. 611(C).

{¶ 84} In speculating on how the trial might have proceeded had Proffitt's counsel objected, the majority cannot say with any level of certainty the outcome would have been different. If a witness claims a lack of memory as to a prior statement he or she gave, such can be treated as a denial, and the use of extrinsic evidence may be permitted. *State v. Pierce*, 2d Dist. Montgomery No. 24323, 2011-Ohio-4873, ¶ 2. Other evidentiary avenues permit the use of extrinsic evidence depending on how the facts develop. *See* Evid.R. 616(C). How the evidence might have developed if an objection had occurred, we will never know.

{¶ 85} The defendant clearly has the burden to prove his claim of prejudice. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989). However, we need not speculate as to what turn the trial testimony may have taken if there had been an objection because the defendant's failure on the first prong of *Strickland* makes it unnecessary to engage in an analysis of the prejudicial impact of any alleged errors. *Id.* Simply stated, Proffitt received assistance of counsel, and his Sixth Amendment right to counsel was not violated.

## CONCLUSION

{¶ 86} Based on the record, the trial court properly admitted the victim-witness'

testimony, and did so after finding that the state had laid a sufficient foundation. Evid.R. 803(5) evidence is proper when the witness has insufficient memory to accurately testify to crucial information, the witness' past recollection recorded was made when the matter was fresh in the witness' memory, and the past recollection recorded correctly reflects the witness' knowledge at the time it was recorded, which reflected "a general assertion of honesty." The trial court's decision in this matter was not unreasonable, arbitrary, or unconscionable.

{¶ 87} Furthermore, and even if the evidence was inadmissible, Proffitt cannot demonstrate that he received ineffective assistance of counsel where counsel's lack of objection to the statements was trial strategy. The fact it was not the "primary strategy" that the majority would have preferred to see is of no consequence. Our review standard is highly deferential and we must avoid temptation to focus on the outcome or employ hindsight. The trial court's ability to see through the credibility issues raised by defense counsel's trial strategy does not render such assistance ineffective. As such, I respectfully dissent from the majority's decision to reverse Proffitt's convictions.