[Cite as *State v. Sharpe*, 2024-Ohio-2105.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio/City of Perrysburg                    Court of Appeals No.   WD-23-031

      Appellee                                          Trial Court No.  CRB2200997

v.

David M. Sharpe                                     **DECISION AND JUDGMENT**

      Appellant                                          Decided:  May 31, 2024

* * * * *

Chynna L. Fifer, City of Perrysburg
Prosecuting Attorney, for appellee.

Jacob A. Studer, for appellant.

* * * * *

**ZMUDA, J.**

## I.  Introduction

{¶ 1} This matter is before the court on appeal from the sentence imposed by the Perrysburg Municipal Court judgment on May 9, 2023, following a jury trial. The trial court imposed two, 30-day jail sentences, with all but 3 days suspended, after the jury returned a guilty verdict on charges of criminal trespass and menacing by stalking. For the reasons that follow, we affirm.

## II. Facts and Procedural History

{¶ 2} In September of 2021, appellant, David Sharpe, purchased a home from the victim in this case, C.P. Between September of 2021 until about May of 2022, appellant and his wife were friendly with C.P. and his wife, and appellant knew that C.P. was building a new home about a mile from the home he purchased from C.P. After appellant took possession of his new home, he noticed items that he believed C.P. should have remedied in the home that he purchased. He also believed C.P. had a warranty for the roof, and sought the warranty information from C.P. after the home suffered damage to the roof in the summer of 2022. Appellant began pressing C.P. to remedy issues with the home, either through repairs or monetary compensation, and he requested paperwork for the roof's warranty. In the summer of 2022, C.P. stopped accepting or responding to appellant's texts, emails, and phone calls. C.P. claimed he told appellant to stop contacting him. Appellant claimed he just noticed that C.P. stopped responding when he reached out.

{¶ 3} On September 19, 2022, appellant went to C.P.'s new home, still under construction, to confront C.P. about issues with appellant's home and to obtain warranty information for the roof. Appellant entered the home and found C.P. inside. Appellant described the encounter as brief and civil, with appellant asking for the warranty paperwork and C.P. telling appellant the house was sold as-is and appellant should leave. Appellant claimed he quickly left the property, and later received a phone call from a Perrysburg police officer. Appellant gave a statement and was told there would be no charges. The officer believed the matter was a civil dispute between appellant and C.P.

2.

{¶ 4} C.P.'s version of the encounter differed. C.P. is a contractor; he built the home appellant purchased as his personal residence and lived in it for two years. In September of 2021, appellant approached C.P. and his wife about buying the house, despite the fact the home was not listed for sale at the time. C.P. and his wife agreed to sell, and within two months the home was sold to appellant, as-is, and without an inspection. C.P. described the relationship with appellant as initially friendly. As appellant became dissatisfied with his new home, however, C.P. felt appellant became demanding, with the conduct escalating until contact with appellant became unbearable and C.P. asked appellant to leave him alone. C.P. then blocked appellant on his phone to end the daily text messages, and eventually blocked appellant on email.

{¶ 5} On the date of the incident, C.P. was working at the new home site when appellant entered, startling C.P. with his appearance inside the home. According to C.P., he was talking to a contractor inside the kitchen area, and after the contractor went out the back door, he noticed appellant was there, and appellant started to rant regarding what appellant believed C.P. owed him, screaming and hollering. C.P. argued with appellant, but after a few minutes, told appellant to get out of his house and off his property. C.P. stated that appellant refused to leave, at first, but after being asked three or four times to leave, eventually left in a rage, telling C.P. he was going to get his friends and would come back to hurt C.P.

{¶ 6} C.P. called police to report the incident. Officers interviewed both appellant, at his address, and C.P., at his home-under-construction. The officer who interviewed appellant cautioned appellant to stay away from C.P. The police who responded to C.P.'s

3.

home took C.P.'s statement but seemed unsure of the appropriate charge, if any. The officers called their supervisor to the scene to address C.P.'s concerns, and after lengthy discussion determined no charges would be filed, but asked C.P. to follow up with the prosecutor's office. After consulting with the prosecutor, appellant was charged with two counts: criminal trespass in violation of R.C. 2911.21(A)(1), a misdemeanor of the fourth degree; and menacing in violation of R.C. 2903.22(A), a misdemeanor of the fourth degree.

{¶ 7} Appellant retained an attorney and entered a plea of not guilty to the charges. He requested a jury trial in the matter, with trial held on March 23, 2023.

{¶ 8} The state presented testimony of C.P., as well as testimony from the officers. C.P. testified regarding his history with appellant, describing how matters escalated up to the date of the incident. C.P. testified that the police were reluctant to file any charges despite his claim that appellant threatened him after surprising C.P. inside his new home. C.P. indicated he now has fear that appellant will return, and C.P. has a special needs daughter who would be particularly vulnerable should appellant decide to follow up on his threats.

{¶ 9} The officers testified regarding their investigation, which included collecting statements from C.P., appellant, and the only other people at the scene, an Amish work crew who had no information due to their lack of proximity to the argument inside the home. No further investigation occurred between the date of the incident and the date that the prosecutor filed charges.

4.

{¶ 10} Appellant's trial counsel elicited testimony from the officers, on cross-examination, demonstrating the officers did not believe the incident rose to the level where charges should be filed. The officers understood that the prosecutor filed the charges after a lengthy meeting with C.P. Appellant testified on his own behalf, denying any threats and reiterating his claims that he only confronted C.P. regarding the parties' civil dispute, in an attempt to resolve things.

{¶ 11} Throughout trial, appellant's trial counsel repeatedly argued that the charges should never have been filed in what was, essentially, a civil dispute, and that it was only C.P.'s insistence that led to charges. Appellant's trial counsel elicited testimony demonstrating none of the officers decided to file charges after investigating on the day of the incident. Furthermore, the officer's acknowledged they called their supervisor to speak with C.P. about his insistence they charge appellant, and no officer did any follow-up investigations prior to the prosecutor's decision to move forward with charges.

{¶ 12} The state countered this defense with C.P.'s testimony, detailing the history between the two men and the events on the date of the incident that led to charges. The state also addressed the officers' reluctance to file charges, differentiating the investigative role of police and the charging role of the prosecutor.

{¶ 13} After deliberating, the jury found appellant guilty on both charges. The trial court continued the matter for sentencing, and on May 9, 2023, imposed a 30 day jail sentence for the criminal trespass charge, with 27 days suspended, and a 30 day jail sentence for the menacing charge, with all days suspended. The trial court placed

5.

appellant on 24 months of community control, ordered participation in a mental health program, and ordered appellant to have no contact with C.P.

{¶ 14} Appellant filed a timely appeal from this judgment.

### III. Assignment of Error

1. On appeal, appellant raises the following assignment of error, with "issues for review," as follows:

For his sole assignment of error, Appellant contends that he was denied the effective assistance of counsel in violation of his under the Sixth Amendment of the United States Constitution and Article One, Section Ten of the Ohio Constitution.

{¶ 15} Appellant offers the following three issues for review:

I. Trial counsel failed to utilize any cognizable strategy at trial, rendering his assistance ineffective.

II. Trial counsel admitted to incompetence on the record.

III. But for trial counsel's failure to impeach the state witness or object to prosecution's inappropriate characterization of Appellant, a reasonable doubt as to Appellant's guilt would have been established.

### IV. Analysis

{¶ 16} Appellant's issues on appeal all implicate his right to effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10, of the Ohio Constitution. To prevail on his claim of ineffective assistance of counsel, appellant must demonstrate "(1) deficient

6.

performance of counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale,* 2008-Ohio-3426, ¶ 204, citing *Strickland v. Washington,* 466 U.S. 668, 687-688 (1984).

{¶ 17} Appellant's first and third issues challenge his trial counsel's trial strategy. His second issue argues his trial counsel admitted incompetence on the record. For ease of discussion, we address these issues out of order.

### A.  Trial counsel did not admit incompetence regarding the representation provided during the trial.

{¶ 18} Relative to his second issue in support of his ineffective assistance of counsel claim, appellant argues his trial counsel admitted incompetence, sufficient to establish the deficiency prong under *Strickland,* without further review by this court. In support, appellant cites statements made by his trial counsel at the time of sentencing and notes an instance in which the trial court corrected trial counsel during trial, regarding the proper use of Crim.R. 29.

{¶ 19} First, as to statements at sentencing, appellant's trial counsel argued in mitigation, seeking a favorable sentence.  Counsel noted appellant's stability and activities in the community, characterizing the incident with C.P. as an isolated event, with no prior incident between the men and no contact with C.P. after the incident. Trial counsel indicated he blamed himself for not seeking a resolution by plea to a reduced charge, believing "there was reasonable doubt in this case, and I thought that that was what the verdict was going to be."

7.

{¶ 20} Trial counsel further stated:

> And I think I made a mistake in the way I advised my client, and I think that's part of the decision to go to trial. So what I'm saying is is [sic.] I think I made a mistake in this case that resulted in this case going to trial. I'm not – I'm not suggesting to this Court that his behavior was correct in this situation. What I'm saying is I could have done a better job of advising him to enter a plea in this case. And a lot of his going to trial in this case, part of that was my not talking him into entering a plea in this case. So I'm just trying to give you all the factual background in the situation.
>
> In this case I know Dave wishes that this entire incident never happened. And I would ask the Court to consider a fine and court costs. If the Court deems inactive probation is appropriate, Dave is willing to do that. I would also indicate that if the Court deems that a no contact order is necessary, we're amenable to that. But I would just point out, for the record, in the eight months since then, there has been no contact whatsoever, nor an allegation of any contact. We apologize for this entire situation, and I wish it never happened.

When asked by the trial court to clarify the point of the apology, or explain how the apology relates to the facts of the case, appellant's trial counsel further stated:

> Okay, obviously, Judge, after discussion with my client, my client never should have went over there on the day in question. And it's obvious that regardless of what his intentions were that it created a very bad situation. And if he hadn't gone over there and if he had contacted an attorney and gone through those channels, none of this would have ever happened. So the responsibility for creating the situation was clearly my client. And he acknowledges that. And all I'm saying is I don't think I helped the situation by taking the case to trial, and that's on me. That's not necessarily on him. That's what I'm trying to say. But clearly the situation the way it happened never should have happened. It should have been avoided. Dave acknowledges that, and we would just ask you to take those factors into consideration. Thank you.

{¶ 21} In response to this argument, the prosecutor acknowledged the offer of a plea to appellant.[1] But the prosecutor dismissed counsel's assumption of any blame for

---

[1] The record on appeal does not contain the details of the plea, offered by the state and rejected by appellant.

8.

appellant's rejection of the plea offer, noting, "The reality is I know he had those discussion with his client and his client was never going to accept the offer because he was never going to accept responsibility." In support, the prosecutor noted appellant never acknowledged his conduct, not during a separate civil protection order case involving C.P., not during trial, and not during his presentence investigation (PSI) interview. The PSI report also contained information about prior, similar conduct by appellant, and the prosecutor argued that, up until the present, appellant had been able to talk himself out of any real consequences for his behavior.

{¶ 22} Appellant argues his trial counsel's admissions, for purpose of mitigation at sentencing, actually constituted an admission of incompetence during trial. To be clear, appellant does not claim ineffective assistance based on his trial counsel's failure to explain the potential plea or his counsel's failure to convince appellant to accept the plea rather than proceed to trial. Instead, appellant argues his counsel's remarks at sentencing overcome any presumption of effective representation during trial. There is no support in the record for this interpretation of his counsel's statements, as appellant's trial counsel clearly referenced the decision to proceed to trial rather than accept a plea offer as his "mistake." The remainder of appellant's claim regarding incompetence, based on the trial record, similarly offers no support.

{¶ 23} Appellant claims that the trial court had to correct his attorney regarding the proper use of Crim.R. 29, while also implying his attorney lacked familiarity with the criminal rules or even basic trial advocacy skills. Appellant's argument implies the trial

9.

court found his trial counsel lacking, without any reference to the record that supports such a conclusion.

{¶ 24} There were few instances of the trial court interacting with counsel in this regard. Instead, the record demonstrates that the trial court interrupted both the prosecution and the defense, without objection, to limit questioning of the officers. The trial court interrupted the defense questioning of all three officers, sua sponte, to limit the defense questions that probed into "charging decisions," in one instance stating "You know, I have to stop you here, I'm sorry. ... And I apologize. I was waiting for the state to object and they didn't… ."

{¶ 25} At the end of the state's case, appellant's trial counsel stated, "We'd make a Rule 16 motion." The trial court responded, "Rule 29." Counsel apologized for his mistake without further comment by the trial court before denying the motion. Contrary to appellant's argument, the record demonstrates that his trial counsel understood the proper use of a Crim.R. 29 motion for acquittal, made after "the evidence on either side is closed," and merely misstated the number. *See* Crim.R. 29(A). After the defense rested, trial counsel stated, "We'll renew the 29 motion." The trial court again denied the motion.

{¶ 26} Contrary to appellant's characterization of the record, there is nothing demonstrating an admission of incompetent representation at trial. Appellant's criticism of trial conduct, therefore, is limited to a mistake in referencing the rules, which was quickly correct by trial counsel and did not prevent the trial court from ruling, and challenges to his trial counsel's cross-examination. Appellant recognizes the applicable

10.

law, that "[in] Ohio, a properly licensed attorney is presumed competent." *State v. Hamblin,* 37 Ohio St.3d 153, 155-156 (1988), citing *Vaughn v. Maxwell,* 2 Ohio St.2d 299, 301 (1965). At the same time, appellant argues this presumption is overcome based solely on comments made by counsel, at sentencing, taken out of context. We disagree.

{¶ 27} With no support for the claimed admission to incompetence, we proceed under the standard articulated by *Strickland.* This includes a presumption of competence, which appellant must overcome. We address the remaining "issues" under the assignment of error accordingly.

### B.  Appellant fails to demonstrate deficient trial strategy, requiring reversal based on ineffective assistance.

{¶ 28} In his first and third issues, appellant argues his trial counsel lacked any discernible strategy at trial and failed to impeach the state's witnesses or object to "inappropriate characterizations" of appellant during trial.

{¶ 29} In considering whether trial counsel rendered ineffective assistance, we note our scrutiny of counsel's performance "must be highly deferential" with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Bradley,* 42 Ohio St.3d 136, 142 (1989), quoting *Strickland,* 466 U.S. at 689. We recognize that effective assistance may include different approaches or strategies, "but strategy is not synonymous with reasonableness." *State v. Bunch,* 2022-Ohio-4723, ¶ 36, citing *Strickland* at 689. Thus, to prevail on his claim of ineffective assistance, appellant must demonstrate his trial counsel's strategy so deviated "from the standard of reasonableness 'that ordinary trial counsel would scoff at hearing of it.'" *State*

11.

*v. Bailey,* 2023-Ohio-657, ¶ 25 (6th Dist.), quoting *State v. Newsome,* 2005-Ohio-3775, ¶ 8 (11th Dist.), quoting *State v. Burgins,* 44 Ohio App.3d 158, 160 (4th Dist.1988).

{¶ 30} Appellant first argues his trial counsel lacked any cognizable trial strategy. Appellant's argument, however, does not address a "cognizable trial strategy" and focuses solely on his trial counsel's failure to impeach C.P. Appellant ignores the strategy, evident in the record, to demonstrate the incident between appellant and C.P. was merely a civil dispute, amplified by C.P. until charges were filed. Instead, appellant focuses on a single exhibit and argues his counsel introduced defense Exhibit C, "in which the victim-witness testified that he was not in fear of his life, which would defeat a charge of menacing" and then failed to cross examine on this key statement. Appellant argues his trial counsel revealed "a specific strategic intent" in his opening statement – demonstrating C.P.'s allegations were in error – and "refrain[ed] from the only course of action that could accomplish that strategy[.]"

{¶ 31} Appellant argues that his case is analogous to, and more egregious than, the Twelfth District Court of Appeals case of *State v. Proffitt,* 2017-Ohio-1236. In *Proffitt,* trial counsel failed to object to hearsay statements contained within a witness's prior written statement. At trial, the witness could not recall writing the statement and did not recognize the written statement or recall the allegation within the statement, that the defendant threatened to kill her. *Proffitt* at ¶ 7. Despite these facts, defense counsel did not object to the witness reading her prior written statement into the record. *Id.* 8. In finding ineffective assistance, the Twelfth District held: "No reasonable trial strategy is

12.

apparent in defense counsel's failure to object to the admission of the Statements, upon which the state's case depended." *Id.* at ¶ 34.

{¶ 32} Upon thorough review, we find this case is not analogous, but instead inapposite to the present case. Here, the exhibit in question, Defendant's Exhibit C, does not support appellant's argument. First, Exhibit C is C.P.'s written statement for police, completed on September 19, 2021, in which C.P. indicates he *was* in fear and urged police to arrest appellant. C.P.'s statement, in its entirety, is as follows:

> I was in my kitchen talking to my framer [and] when I turned around David Sharpe was standing right behind me. He said where is money [and] I said what money. He has been harassing me for months. I've been telling him for months that he bought my personal as is home. Once he closed on the home that was it. There is no warranty, it is a used property [and] anything that goes on with the house from that day forward is his responsibility. He did not enter into a contract with nor [buy] the home from my company. He started insulting me [and] I told him to get out of my house [and] off of my property. He kept arguing [and] I had to repeatedly tell him to get out of my home. On his way out he said that he was going to get his friends to hurt me. I told the officers **I'm in fear for my life**. I've done everything possible to get him out of my life. Now he's taken it too far with coming into my home [and] threatening me. I have a special needs daughter who wouldn't even know to run if he came back shooting or something. **I am in fear for my family's safety [and] I want him arrested. He came into my home [and] threatened me [and] I feel he's going to come back because there were no repercussions**. (Emphasis added.).

{¶ 33} During trial, C.P.'s testimony was consistent with this statement and C.P. was never asked to read his prior statement into the record as the main evidence in the state's case. C.P.'s insistence that appellant be arrested, furthermore, was also consistent with the defense theory that it was only C.P.'s insistence that led to criminal charges in an otherwise civil dispute. Appellant's trial counsel also questioned C.P. regarding his

13.

insistence on criminal charges, with C.P. admitting he was not happy with the two officers who responded and asked to speak to a supervisor. When no officer indicated charges would be filed, but instead recommended C.P. speak with the prosecutor, C.P. met with the prosecutor the next day.

{¶ 34} Unlike the facts in *Proffitt,* appellant is not challenging a hearsay statement that provides crucial support for the state's case. Instead, appellant is arguing that his trial counsel lacked a discernable trial strategy because he did not cross-examine C.P. on his written statement to demonstrate contradictory evidence of his claims of fear, necessary to support conviction on menacing. This argument misconstrues the content of C.P.'s written statement and ignores the context within which appellant's trial counsel used the exhibit in cross-examination.

{¶ 35} Appellant next argues that his trial counsel's conduct resulted in prejudice to the defense case because the state's case relied on C.P.'s testimony and his counsel failed to object to C.P.'s testimony or impeach that testimony.[2] Again, appellant compares his case to the facts in *Proffitt,* arguing the failure to object to "potentially inadmissible evidence" in *Proffitt* was deemed prejudicial. Therefore, appellant argues, his trial counsel should have objected to C.P.'s testimony. However, appellant fails to identify any basis to object to the admission of C.P.'s testimony. At best, appellant appears to argue that C.P.'s testimony should have been precluded because the state

---

[2] Although the issue raised also challenges the prosecution's conduct and trial counsel's failure to challenge the "prosecution's inappropriate characterization of Appellant," appellant's brief contains no argument in support of this issue.

14.

needed that testimony to satisfy the prosecution's burden of proof, and therefore, that evidence was prejudicial.

{¶ 36} While appellant references "prejudice," he does so in terms of prejudicial evidence. In considering evidence, there is a distinction between "prejudice" and "unfair prejudice."

> As a legal term, "prejudice" is simply "[d]amage or detriment to one's legal rights or claims." Black's Law Dictionary (8th Ed.1999) 1218. Thus, it is fair to say that all relevant evidence is prejudicial. That is, evidence that tends to disprove a party's rendition of the facts necessarily harms that party's case. Accordingly, the rules of evidence do not attempt to bar all prejudicial evidence—to do so would make reaching any result extremely difficult. Rather, only evidence that is *unfairly* prejudicial is excludable.
> " 'Exclusion on the basis of unfair prejudice involves more than a balance of mere prejudice. If unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under Rule 403. Emphasis must be placed on the word "unfair." Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision.

*State v. Crotts,* 2004-Ohio-6550, ¶ 23-24, quoting *Oberlin v. Akron Gen. Med. Ctr.,* 91 Ohio St.3d 169, 172 (2002).

{¶ 37} Admissibility of evidence concerns undue or unfair prejudice, as all adverse evidence is prejudicial. *See Crotts* at ¶ 23. Furthermore, a finding that prejudicial testimony was admitted is separate from a finding that prejudice resulted from an attorney's failure to provide effective assistance. As appellant acknowledges, this was a case that turned on whether the jury believed appellant or C.P., as the two men were the only witnesses to the incident that led to the charges on trial.

15.

{¶ 38} In arguing ineffective assistance of counsel, appellant mischaracterizes the record as it relates to the contents of defense Exhibit C and otherwise argues improper admission of C.P.'s "prejudicial" testimony, without any basis to challenge admissibility. Appellant also fails to support his argument that his trial counsel lacked any cognizable trial strategy, considering appellant bases much of his argument on disagreement with counsel's strategy in cross-examining C.P. Therefore, while arguing a lack of strategy, appellant also challenges his trial counsel's strategy, questioning his counsel's trial tactics. Appellant further fails to demonstrate these tactics as unreasonable or deficient, sufficient to overcome the strong presumption of effective assistance. *See State v. Mohamed,* 2017-Ohio-7468, ¶ 18-19 (tactical error or questionable strategy is not the same as ineffective assistance, despite argument of better strategy that might have been used) (citations omitted.).

{¶ 39} Considering the record, appellant's claim of no cognizable trial strategy lacks factual support and appellant fails to demonstrate deficient performance by his trial counsel, with no demonstration of any basis to overcome the presumption of competent representation, necessary to find deficient performance. A "failure to satisfy either part of the test set for in *Strickland* (deficient performance plus prejudice) is fatal to an ineffective assistance claim." *State v. Mick,* 2018-Ohio-999, ¶ 21 (6th Dist.), citing *Strickland,* 466 U.S. at 697; *Bradley,* 42 Ohio St.3d at 143 (additional citation omitted.).

{¶ 40} Accordingly, as to appellant's sole challenge to the judgment based on ineffective assistance of counsel, we find the assignment of error not well-taken.

16.

## V. Conclusion

**{¶ 41}** Having found substantial justice has been done, we affirm the judgment of the Perrysburg Municipal Court. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

Thomas J. Osowik, J.                _____

                                                JUDGE

Gene A. Zmuda, J.            

Charles E. Sulek, P.J.               _____
CONCUR.                                          JUDGE

                                              _____

                                              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.